# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:25-mc-00003-MR

| | |
|---|---|
| IN RE MISSION HEALTH ANTITRUST LITIGATION | ORDER |

**THIS MATTER** is before the Court on the Defendants' Motion to Compel [Doc. 1].

## I. BACKGROUND

On June 3, 2022, Plaintiff City of Brevard, North Carolina, on its own behalf and on behalf of all others similarly situated, initiated this action against HCA Healthcare, Inc.; HCA Management Services, LP; HCA, Inc.; MH Master Holdings, LLLP; MH Hospital Manager, LLC; MH Mission Hospital, LLLP (all of which are hereinafter together referred to as "HCA" or the "HCA Defendants"); ANC Healthcare, Inc. f/k/a Mission Health System, Inc.; and Mission Hospital, Inc. (which are hereinafter together referred to as "Mission" or the "Mission Defendants"). [Doc. 1].

On July 27, 2022, Plaintiffs Buncombe County, North Carolina, and City of Asheville, North Carolina, on their own behalf and on behalf of all others similarly situated, initiated an action against the HCA Defendants and the Mission Defendants. [Civil Case No. 1:22-cv-00147-MR-WCM, Doc. 1].

On August 4, 2022, Plaintiff City of Brevard moved to consolidate Civil Case No. 1:22-cv-00114-MR-WCM and Civil Case No. 1:22-cv-00147-MR-WCM. [Doc. 41]. On August 8, 2022, the Court entered an Order and Initial Case Management Plan consolidating Civil Case No. 1:22-cv-00114-MR-WCM and Civil Case No. 1:22-cv-00147-MR-WCM for all purposes up to and including trial. [Doc. 42]. The Court also designated Civil Case No. 1:22-cv-00114-MR-WCM as the lead case and ordered Civil Case No. 1:22-cv-00147-MR-WCM to be closed. [Id.].

On August 19, 2022, Plaintiffs City of Brevard, North Carolina; Buncombe County, North Carolina; City of Asheville, North Carolina; and Madison County, North Carolina (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, filed a Consolidated Class Action Complaint against the HCA Defendants and the Mission Defendants. [Doc. 43]. In their Consolidated Complaint, the Plaintiffs allege that the Defendants have engaged in an anticompetitive scheme to maintain and enhance monopoly power in two health care services markets in parts of Western

North Carolina: (1) the market for inpatient general acute care and (2) the market for outpatient care. [Id. at ¶ 4].

On June 6, 2024, the Court entered a Pretrial Order and Case Management Plan, and thereafter amended the Pretrial Order and Case Management Plan setting a discovery deadline of March 14, 2025. [Docs. 82, 134].

On July 17, 2024, the Defendants served their subpoena to non-party Blue Cross and Blue Shield of North Carolina ("BCBSNC"). [See Doc. 3-1]. The Defendants' subpoena – which includes ten (10) pages of "Instructions" consisting of forty-three (43) paragraphs; requests for production comprised of forty-five (45) parts/subparts; nine (9) pages of definitions of "data sets;" and proposed Protective Orders – totals one-hundred and eighteen (118) pages. [Id.]. In response, BCBSNC provided over 500 gigabytes of data, consisting of innumerable pages. [See Doc. 8 at 2, fn. 1]. However, the Defendants assert that BCBSNC's production is insufficient. [See Docs. 2, 10]. While the Defendants and BCBSNC met and conferred over the discovery requests, they were not able to come to a resolution of their dispute.

On December 26, 2024, the Defendants filed their present Motion to Compel in the Middle District of North Carolina, as well as a Motion to

3

Transfer. [Docs. 1, 4].[1] On January 9, 2025, BCBSNC filed its Response to the Motion to Compel. [Doc. 8]. On January 16, 2025 the Defendants filed their Reply. [Doc. 13]. On February 3, 2025, the Defendants' Motion to Transfer was granted and the matter was transferred to this Court. [Doc. 14].

## II. STANDARD OF REVIEW

Rule 45 of the Federal Rules of Civil Procedure permits a party to issue subpoenas for the production of documents and other things from nonparties. Fed. R. Civ. P. 45(a)(1)(C); Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Rule 45 is limited in scope by Rule 26 of the Federal Rules of Civil Procedure which provides, in pertinent part, as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[1] The Defendants' Motions were filed in ECF on December 26, 2024, but were signed and served *via* Federal Express and email on December 23, 2024. [Doc. 1 at 5, 7; Doc. 4 at 2, 4].

4

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Kinetic Concepts, Inc. v. ConvaTec Inc., 268 F.R.D. 226, 243 (M.D.N.C. 2010). However, when discovery is sought from nonparties, the scope of discovery "must be limited even more." Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 189 (4th Cir. 2019). As such, "a more demanding variant of the proportionality analysis therefore applies when determining whether, under Rule 45, a subpoena issued against a nonparty "subjects a person to undue burden" and must be quashed or modified." Id. "[C]ourts must give the recipient's nonparty status "special weight," leading to an even more "demanding and sensitive" inquiry than the one governing discovery generally." Id.

Ultimately, the decision to grant or deny a motion to compel is generally an issue within the broad discretion of the trial court. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995).

## III. DISCUSSION

The Defendants do a poor job of identifying the requests for which BCBSNC's responses were insufficient. [See Docs. 1, 2]. They simply ask that the Court compel production "of all documents and information responsive to" thirteen requests that are identified only by number. [Doc. 1 at 3-4]; see Virginia Dep't of Corr. v. Jordan, 921 F.3d 180, 190 (4th Cir. 2019) ("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."). The Defendants then shift to an argument that BCBSNC's production is deficient in that it omitted "important materials" and "unique documents and emails" consisting of: (1) *Defendants'* contracts with BCBSNC and other insurers; (2) the effect of such contracts on competition; and (3) insurers' (including BCBSNC's) interactions with *other* providers. [See Doc. 2 at 7]. The Defendants make no attempt to correlate these three broad categories to any of the thirteen requests mentioned in their motion. Moreover, they say little as to what BCBSNC *did* produce and where such production was deficient. The Defendants concede, however, that BCBSNC has produced adequate documents and data regarding claims. [Doc. 2 at 12; Doc. 10 at 3].

This convoluted presentation makes it particularly difficult for the Court to understand what the Defendants are complaining about. After all, it is undisputed that BCBSNC has produced over 500 gigabytes of material. [Doc. 8 at 2]. Using a very rough "rule of thumb" that 10 gigabytes equals roughly one million pages, [Id.], BCBSNC has provided the equivalent of some 50 million pages of information. Yet the Defendants are unsatisfied. Considering the fact that BCBSNC is only one of a number of insurers and providers from whom the Defendants are seeking non-party discovery, it seems clear that the Defendants expect to obtain hundreds of millions of pages of recorded information. Such volume cannot possibly be marshalled into a coherent presentation that can be understood by a jury. This becomes significant to the proportionality analysis. One cannot demand production of the whole of the Library of Congress and then complain that a particular volume is missing.

To justify this approach, Defendants repeatedly fall back on the "argument" that what they seek is "commonly requested and produced in healthcare antitrust litigation."[2] [See e.g., Doc. 2 at 7, 17; Doc. 10 at 4, 6, 8]. Then, much of the argument devolves into a recounting of the back-and-forth

---

[2] Such shorthand is unhelpful to the Court, because cases are not "cookie-cutter," and what may be appropriate discovery in one case is not in another.

of the negotiations regarding the production – not to narrow the scope of what is in dispute, but rather to imply that the opposing parties are being unreasonable.

Turning back to the three broad categories the Defendants seek from BCBS, the first two pertain to the Defendants' own contracts with insurers and their effect.  The Defendants would appear to already possess such information. Therefore, the Court concludes that the Defendants' motion is focused on BCBSNC's interactions with other providers – the third category.

The Defendants articulate that this third category breaks down into three sub-categories: (i) BCBSNC's formation of provider networks; (ii) the price trends/premium trends experienced by BCBSNC; and (iii) BCBSNC's negotiation strategies. [Doc. 2 at 1]. But once again, the Defendants have difficulty articulating how these subcategories correlate with Defendants' thirteen numbered requests and how BCBSNC's responses are deficient with reference to these sub-categories. For reasons the Defendants do not explain, they do not articulate what they believe should be compelled in the ordinary format of: (1) identifying the Defendants' Requests No. at issue and what was asked for; (2) identifying what BCBSNC produced; (3) identifying what in BCBSNC's production is missing; (4) why the Defendants' need what is missing in the production; and (5) how such additional production would

be proportional – thus articulating the Rule 26 discoverability and relevance of the missing item. Maybe this deficiency in the Defendants' Motion is because their Requests and Motion are so overwhelmingly voluminous that they cannot articulate their desires in this manner.

As far as the Court can glean from the Defendants' arguments, the <u>information</u> they still claim to need consists of: (1) internal communications of BCBSNC regarding the three sub-categories previously described; and (2) the external communications between BCBSNC and other providers regarding those three sub-categories, including negotiations and contracts with those other providers. BCBSNC estimates that this would consist of some 275,000 emails for the eight calendar years of 2017-2024. [Doc. 8 at 12].[3] The parties apparently negotiated the parameters regarding the production of this material in terms of search term strings and custodians. The Court will not endeavor to define such strings or custodians for the parties. The Court, however, will require BCBSNC to produce this electronically stored information (ESI material) for the years including 2016 – 2024, but only pertaining to the 18-county area at issue in this case and not including 2015.

---

[3] Using BCBSNC's estimate of 100,000 pages per gigabyte [Doc. 8 at fn. 1], and assuming an average of 3 pages per email, this is approximately 825,000 pages or 8 gigabytes. Including 2016 would add approximately another 100,000 pages or 1 gigabyte.

The next question is who shall bear the expense of this additional production. See Fed. R. Civ. P. 45(d)(2)(B)(ii) (The Court "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."). There is no doubt BCBSNC has already incurred significant expense in producing 500 gigabytes of material to date. [Doc. 8 at 5, 14]. In seeking such astoundingly voluminous discovery of a non-party, as Defendants have done in this matter, they should expect to bear some part of the cost. Moreover, if the remaining portion that Defendants seek to compel is so important to their defense, Defendants could have served a more closely-tailored subpoena to cut more closely to the heart of their defense (and not relied on "we always do this in anti-trust litigation").

The Defendants argue that BCBSNC is an interested party because it is likely a significant class member. However, there is no exemption from the cost-burden provision of Rule 45(d)(2)(B)(ii), beyond what is stated in the Rule. As such, BCBSNC's indirect interest is immaterial to the Court's finding that the discovery sought by the Defendants exceeds what is proportional to the needs of the case and non-party BCBSNC must be protected "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Thus, the Defendants must jointly and severally bear such additional costs

hereafter incurred by BCBSNC. The Court hopes that the parties can work out the parameters of the ESI search (strings and custodians) so as to minimize the burden on BCBSNC, as well as the financial burden on the Defendants, without further intervention by the Court.[4]

The Court recognizes that antitrust litigation is complex. This, however, does not warrant the "Send me the National Archives" theory of discovery. Discovery should be geared toward what is needed to prosecute or defend a case – not to ferret out every possible item that may tangentially touch upon the subject matter at hand. That is what the proportionality rules are designed to address. Antitrust cases are not exempt. (The Court hopes that the parties will proceed further with this case in a more civilized manner.).

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion to Compel [Doc. 1] is hereby **GRANTED**, to the extent that BCBSNC is to produce within thirty days of this Order the electronically stored (ESI) emails internally within BCBSNC and between BCBSNC and providers other than the Defendants, which emails pertain to the eighteen (18) county area at

---

[4] The parties will be required to file with the Court within fourteen (14) days of this Order their agreement regarding the "strings and custodians." If the parties are unable to agree within that period, then the Defendants and BCBSNC shall each file their last proposal regarding such "strings and custodians" within fourteen (14) days hereof, and the Court will resolve the difference.

issues in this case, which address: (i) BCBSNC's formation of provider networks; (ii) the price trends/premium trends experienced by BCBSNC; and (iii) BCBSNC's negotiation strategies, which emails were sent between January 1, 2016 and June 17, 2024.

**IT IS FURTHER ORDERED** that the Defendants shall jointly and severally bear the additional costs hereafter incurred by BCBSNC. And shall pay to BCBSNC the amount thereof within fourteen (14) days of BCBSNC informing the Defendants in writing of the costs incurred.

**IT IS FURTHER ORDERED** that the parties shall file with the Court within fourteen (14) days of this Order their agreement or positions regarding "strings and custodians" as set forth herein.

**IT IS SO ORDERED.**

Signed: April 7, 2025

Martin Reidinger
Chief United States District Judge